UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| TONYA GOLLIHER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 15-127-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| KMART CORPORATION, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

When a subcontractor's employee is injured on the job, she may look up-the-ladder to find an employer to compensate her.  Try as she might, however, the Kentucky Workers' Compensation Act keeps an injured employee—like Tonya Golliher—from climbing any higher than she needs to recover.  If Golliher's employer already paid for her injuries, Kmart, the contractor who hired Tonya's employer, sits safely one rung above liability.

I.

Every consumer has walked down the aisle of a store looking for something. Sometimes, the customer sees someone stocking the shelves and asks her where to find it. But the answer can come as a surprise:  "I don't know, I don't work here."  Tonya Golliher was one of those employees.  Golliher's work at Kmart was part of an agreement between Kmart and American Greetings.  R. 33-3 at 11.  Although she actually worked for American Greetings, her job entailed stocking Kmart's shelves with American Greetings' products— such as greeting cards, party goods, gift cards, gift wrap, and stationary.  R. 33-1 at 2–3; R. 36 at 3; R. 33-3 at 8.

January 14, 2015, started no differently than any other workday: Golliher was stocking shelves at a Kmart. Unfortunately, it ended differently. While Golliher was carrying a box of American Greetings' products down the stairs, a "step gave way" and she fell. R. 33-1 at 4 (quoting R. 32 at 23–25). She injured her back, ankle, and shoulder. *Id*. (citing R. 32 at 26–28, 32, 40–42).

Luckily, American Greetings provides workers' compensation that covers her injuries. So Golliher filed for workers' compensation and received payments from American Greetings. R. 32 at 17, 33. But Golliher thinks Kmart should compensate her, too. So she filed this suit against Kmart for the costs of her injuries. R. 1-1 at 6 (complaint). Kmart does not think it should have to pay. Kmart says that the Kentucky Workers' Compensation Act (KWCA) gives it immunity from this suit, and thus moves for summary judgment. R. 33.

## II.

Under the KWCA, an employee is entitled to recover for her injury—but only once. She cannot receive workers' compensation from her employer and then turn around and sue for the same injury. *See* Ky. Rev. Stat. ("KRS") § 342.690(1). If the employee works for a subcontractor, and is injured doing subcontracted work, the employee may recover from either the subcontractor or the contractor, but not both. To prevent double recovery, the KWCA shields a contractor from liability if the subcontractor has already paid for the employee's injuries. KRS § 342.610. This is called "up-the-ladder" immunity. *Labor Ready, Inc. v. Johnston*, 289 S.W.3d 200, 204–05 (Ky. 2009).

To claim up-the-ladder immunity from this suit, Kmart must prove two things: (1) Kmart was in a contractor-subcontractor relationship with American Greetings, and (2) American Greetings paid for Golliher's injuries. *See* KRS § 342.610; *Gen. Elec. Co. v. Cain*,

2

236 S.W.3d 579, 585, 605 (Ky. 2007). Golliher admits that American Greetings already paid her. R. 32 at 33. So the only question is whether Kmart and American Greetings were in a contractor-subcontractor relationship. And since Kmart is moving for summary judgment, the real question is whether—when viewing the facts in the light most favorable to Golliher—there is a material issue of fact as to whether Kmart and American Greetings had such a contractor-subcontractor relationship. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To prove that they had a contractor-subcontractor relationship, Kmart must show that American Greetings performed work for Kmart that is a "regular or recurrent part" of Kmart's business. KRS § 342.610(2)(b); *see also Cain*, 236 S.W.3d at 585. Kmart has. Kmart stocks and sells many things in its stores, including greeting cards, gift cards, party goods, gift wrap, and stationary. R. 33-1 at 2, 10. American Greetings is a company that makes and sells greeting cards, gift cards, party goods, gift wrap, and stationary. R. 33-3 at 8. And American Greetings agreed to help Kmart stock and sell these festive products. *Id.* at 11. Thus, American Greetings performed work that is a "regular or recurrent part" of Kmart's business.

Golliher does not dispute that Kmart stocks and sells American Greetings' products. Rather, she argues that what American Greetings does is "entirely separate" from Kmart's business, because only American Greetings' employees—and no Kmart employees—stock and display American Greetings' products. R. 36 at 8. But subcontracted work can be a "regular or recurrent part" of the contractor's business even if the contractor's employees never perform that work. *See Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 462 (Ky. 1986). To be considered a contractor under Kentucky law, the

3

question is not whether Kmart expects its own employees to stock American Greetings' products, but whether Kmart expects *somebody* to do that work because it is a part of Kmart's regular business.   For example, when a construction company hires another company to do the carpentry work, or a mining company hires a delivery-truck company to move its coal, both companies have subcontracted part of the regular work of their business—work their own employees would otherwise have to do.   *See Fireman's*, 705 S.W.2d at 462 (Ky. 1986) (building construction company subcontracting carpentry); *Tom Ballard Co. v. Blevins*, 614 S.W.2d 247, 249 (Ky. Ct. App. 1980) (mining company subcontracting coal delivery).   Here, because Kmart's business includes stocking and displaying American Greetings' products, hiring American Greetings to do that work creates a contractor-subcontractor relationship between the two companies.  So Golliher's argument fails.

Looking for another way around summary judgment, Golliher tries to undermine Kmart's evidence.   To do this, she makes two arguments.   First, Golliher questions the relevance of the affidavits that describe Kmart's business and the duties of its employees. R. 36 at 4–5, 7.  Golliher points out that these affidavits are from Jesse Gonzales and Katrina Willis, who both work for Sears Holdings Management Corporation, not Kmart.   *Id*. at 4–5. If they don't work for Kmart, Golliher asks, how they can know anything about Kmart's business?   Easy:   It's their job to know.   Kmart is wholly owned by Sears Holdings Management Corporation, R. 4 (corporate disclosure statement), and in their positions at Sears, Gonzales and Willis oversee Kmart.   R. 33-4; R. 33-2.   As such, their affidavits are relevant to this case.   Golliher's first attempt to poke a hole in Kmart's evidence fails.

Second, Golliher alleges that Gonzales's affidavit merely states an unsupported legal conclusion.  R. 36 at 7.  The Court may indeed disregard affidavits that merely state legal conclusions.  *See Cain*, 236 S.W.3d at 605; *see also* 2A C.J.S. Affidavits § 39 (2006).  But Gonzales's affidavit does more:  It describes the duties of Kmart employees. R. 33-2.  And that information is relevant to determining the scope of Kmart's overall business.  Thus, both of Golliher's attempts to undermine Kmart's evidence fail.

Next, Golliher tries to avoid summary judgment by saying there are still two genuine issues of material fact.  First, she proposes a novel requirement for up-the-ladder immunity.  She argues that a contractor can claim such immunity only if the contractor affirmatively says that it would have compensated the injured worker if the subcontractor had not.  R. 36 at 5–6.  In other words, a contractor can only claim up-the-ladder immunity if it first consents to potential up-the-ladder liability.  And because Kmart has not admitted that it would accept up-the-ladder liability, Golliher's argument goes, there remains a genuine issue of material fact.

Golliher infers this requirement from language in *Fireman's*, which says that part of the KWCA's purpose "is to prevent subcontracting to irresponsible people."  705 S.W.2d at 461.  Because that language was not essential to the holding of the case, it is dicta.  And dicta is not binding law.  *Cawood v. Hensley*, 247 S.W.2d 27, 29 (Ky. 1952).  As such, this reasoning is, at best, merely persuasive.

And it does not persuade here, because that line in *Fireman's* does not insert a new requirement into the KWCA.  When the text of a statute is clear, a court must interpret the statute based on the text alone.  *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005).  This Court may not "supply words or insert something or make additions."

5

*Commonwealth v. Harrelson*, 14 S.W.3d 541, 545–46 (Ky. 2000).  And the language of the KWCA does not include the requirement Golliher says it does.  This is how the KWCA works:  If the subcontractor does not pay, the KWCA requires the contractor to pay; if the subcontractor pays, the KWCA lets the contractor raise an up-the-ladder immunity defense.  *See* KRS §§ 342.610(2), 324.690(1).  Thus, if American Greetings had not paid, Kmart would have had to—regardless of Kmart's consent.  And as Golliher admits, American Greetings did pay.  Thus, this attempt to raise an issue of fact fails.

Finally, though Golliher admits she received workers' compensation, she argues that Kmart did not sufficiently prove that fact.  R. 36 at 6.  Golliher's admission aside, all Kmart needs to provide is proof of coverage by American Greetings.  Then the burden shifts to Golliher to prove that the coverage was somehow inadequate.  *See Cain*, 236 S.W.3d at 605.  Under Kentucky law, producing "[a] certification of coverage from the Department of Workers' Claims" satisfies the employer's initial burden.  *Id*.  Kmart has done just that.  R. 33-5 (DWC Certification of Coverage).  Golliher has produced no evidence showing that her workers' compensation coverage was inadequate.  R. 32 at 33.  When Kmart's lawyers questioned her, Golliher could not specifically recall details about the payments—let alone about their adequacy.  *Id.* at 35.  So Golliher's second attempt to raise an issue of fact fails as well.  Even looking at the evidence in the light most favorable to her, there is no genuine issue of material fact concerning Kmart's up-the-ladder immunity from this suit.

III.

Kmart and American Greetings had a contractor-subcontractor relationship, and American Greetings paid workers' compensation for Golliher's injuries.  The Kentucky Workers' Compensation Act therefore gives Kmart up-the-ladder immunity from this suit.

Thus, Kmart is entitled to judgment as a matter of law.   Accordingly, Kmart's motion for summary judgment, R. 33, is **GRANTED.**

This the 10th day of August.

Signed By:

_**Amul R. Thapar**_

**United States District Judge**